# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-1211

PATRICIA ROGERS,

*Plaintiff-Appellant,*

v.

CITY OF CHICAGO, AN ILLINOIS
MUNICIPAL CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 2227—**Harry D. Leinenweber**, *Judge.*

ARGUED NOVEMBER 7, 2002—DECIDED FEBRUARY 26, 2003

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Patricia Rogers has been a police officer employed by the City of Chicago since 1985. Rogers filed a two-count complaint against the City alleging that she suffered sexual harassment in the form of a hostile work environment and, after she complained, retaliation. Rogers appeals from the district court's entry of summary judgment for the City, and she also challenges several evidentiary rulings. We affirm.

## I.

Because this case comes to us after summary judgment in the City's favor, we review the record in the light most favorable to Rogers. *Cowan v. Prudential Ins. Co. of Am.*, 141 F.3d 751, 755 (7th Cir. 1998). In 1985 Rogers began working for the City of Chicago as a police officer. Her career progressed until 1996, when she voluntarily transferred to the 24th district. Rogers claims that, after her transfer and between November 1996 and the end of January 1997, several statements and actions of Sgt. Robert Kelenyi created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Specifically, Rogers points to the following ten occurrences, supported by evidence within the record before the district court:

(1)     a comment by Kelenyi to Rogers that he would "like to be that FOP [Fraternal Order of Police book] in [her] back pocket";

(2)     when Rogers appeared to be slipping on the stairs, Kelenyi said "don't fall," caught hold of Rogers, and then asked Rogers whether she had a boyfriend or needed one;

(3)     a comment by Kelenyi to Rogers and Mark Kelly, one of Rogers's partners, during an evening check off, when they were turning in their daily reports of activity (that showed high activity), that "[y]ou guys are the real police. What are you trying to do, get on the TAC team?";

(4)     Kelenyi's interference with Rogers and Kelly's response to a domestic violence call;

(5)     Kelenyi's threatening remarks to Rogers and Kelly that he had a problem with the two of them;

(6)     Kelenyi's remark to Rogers, while exiting a locker room, that "Your breasts look nice in that turtle- neck, that red turtleneck";

(7)     Kelenyi's frequent appearance on jobs and calls of Rogers even when he was not her assigned Ser- geant;

(8)     Kelenyi's refusal to process, or to turn back, reports prepared by Rogers and Kelly;

(9)     Kelenyi's ordering Rogers to put a document in a box at the end of the room, stating, "Put this in the bin so I can watch you walk over and put it in"; and

(10)    Kelenyi's interference with the work of Rogers and another one of her partners in a robbery case.

On January 24, 1997, subsequent to these incidents, Rogers complained to her lieutenant, Daniel Schrager, about Kelenyi's behavior. Schrager then submitted a written re- port of the matter to the Police Department's Internal Affairs Division, which in turn conducted an investiga- tion pursuant to the Department's policy for looking into claims of sexual harassment. Schrager was unhappy with Rogers's complaint, telling her that she would "get the backlash from this," which caused Rogers to tremble to the point that she "thought she was having a panic attack." Two months after Rogers filed her complaint, the Depart- ment placed Rogers in the Behavioral Alert Program ("BAP"), which is a program for employees with perfor- mance problems that requires participants to undergo a medical examination. The Department's stated reason for this decision was her excessive use of medical leave.

On March 21, 2001, the district court excluded, under Fed. R. Civ. P. 37, Rogers's evidence of a pattern and

practice of discrimination. On December 21, 2001, the district court issued an order that: (1) excluded from evidence the affidavit of Rogers supporting her factual allegations; (2) excluded from evidence the testimony of Rogers's expert; and (3) granted the City's motion for summary judgment. Rogers challenges all four rulings on appeal.

## II.

### A.  Evidentiary Rulings

We begin with the evidentiary issues. In order to prove that she is entitled to relief because of the exclusion of evidence, Rogers must show not only that the district court erred, but also that the exclusion prejudiced her "substantial rights." *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1266 (7th Cir. 1988) (quoting Fed. R. Civ. P. 61); *Crumpton v. Confederation Life Ins. Co.*, 672 F.2d 1248, 1253 (5th Cir. 1982) (holding that parties asserting an evidentiary error on appeal bear the burden of showing that their substantial rights were affected). This is a showing that Rogers does not even attempt to make. Although her briefs are replete with arguments as to why it was error for the district court to exclude the evidence in question, Rogers never explains why the exclusion of this evidence affected her substantial rights. In the absence of Rogers's attempt to show prejudice, we decline, for that reason alone, to disturb the district court's judgment on the basis of its evidentiary rulings. Moreover, it is not obvious from the face of the proposed evidence that excluding the material was detrimental to Rogers; it is questionable that the evidence was even admissible.

As to Rogers's evidence of a pattern and practice of discrimination, nowhere does she identify exactly what

this evidence was. It appears from Rogers's motion to reconsider before the district court that she is referring to "[d]ocuments in Plaintiff's counsel's possession pertaining to Plaintiff's counsel's former clients" who had discrimination suits against the City of Chicago. Given that Rogers never explained what these documents were or how they could have aided her case, her argument as to this stricken material fails.

Regarding Rogers's affidavit, as the district court meticulously delineated, this document contained numerous paragraphs that contradicted, in self-serving respects, her deposition testimony, contained inadmissible hearsay, or relied often on unauthenticated documents. Rogers argues that some paragraphs of this affidavit were nonetheless admissible, but this contention misses the mark. The district court was under no obligation to scour Rogers's affidavit in order to glean what little admissible evidence it may have contained. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). And even if the district court had done so, it is unlikely that the document would have allowed Rogers to escape summary judgment. *See Albeiro v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001) (reasoning that self-serving affidavits without factual support in the record do not create a genuine issue of material fact). The district court also struck Rogers's Local Rule 56.1 submission. Because that document was largely based on Rogers's affidavit, and suffered the defects of its main source, it too would probably have aided Rogers little had it been admitted into evidence.

In a similar vein, Rogers's expert witness would likely have done little to aid her cause. The expert testimony of Dorothy Steward concerned the Department's investigatory procedures. But, in a case in which Rogers adduces no competent evidence of harassment occurring *after* she

formally complained to the Department, the Department's method of investigating harassment would seem to be of little moment to the issue of harassment. Steward's testimony might have been relevant to the issue of an adverse employment action under Rogers's theory of retaliation but, as will become clear below, the retaliation claim fails to survive summary judgment even if we assume *arguendo* that the Department took an adverse action against Rogers. We finally note that Steward's affidavit and deposition contradicted one another, which further undermines any argument that excluding this evidence may have been prejudicial.

### B.  Sexual Harassment

We now turn to the district court's granting of summary judgment as to Rogers's claim of sexual harassment in the form of a hostile work environment. This court reviews the district court's grant of summary judgment *de novo*, construing all facts in favor of Rogers, the nonmoving party. *Commercial Underwriters Ins. Co. v. Aires Envtl. Services, Ltd.*, 259 F.3d 792, 795 (7th Cir. 2001). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "[s]ummary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Commercial Underwriters*, 259 F.3d at 795.

As to the theory of sexual harassment in the form of a hostile work environment, the district court granted summary judgment in favor of the City because Kelenyi's

conduct, as an objective matter, "did not rise to the level of harassment." We agree. In order to prevail on her claim of a hostile environment under Title VII, Rogers must establish that, *inter alia*, the environment of which she complained was objectively offensive. *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002). A workplace is objectively offensive when "a reasonable person would find [it] hostile or abusive." *Id.* This is a difficult thing to prove, and drawing the line is not always easy. *See Perry v. Harris Chernin Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997). "Not every unpleasant workplace is a hostile environment. The occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers would be neither pervasive nor offensive enough to be actionable. The workplace that is actionable is the one that is hellish." *Id.* (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir. 1994)). An examination of analogous authority reveals that, on this record, Rogers could not establish that she worked in an objectively offensive environment.

In *Baskerville*, we held that the plaintiff could not establish an objectively severe environment even though, over a seven-month period, the plaintiff's supervisor had: called her a "pretty girl"; grunted "um um um" when the plaintiff wore a leather skirt to the office; told the plaintiff that her presence made the office "hot"; suggested that all "pretty girls," a category that presumably included the plaintiff, "run around naked"; told the plaintiff that he left the company Christmas party early because he "didn't want to lose control" at the sight of "so many pretty girls"; and suggested to the plaintiff that the solitary vice was his chief consolation in his wife's absence. *Id.* at 430. After reviewing the record in the light most favorable to the plaintiff, we observed that the plaintiff's supervisor was "not a man of refinement," but we concluded that no reasonable jury could find the environment

plaintiff endured to be objectively offensive and therefore held that the defendant was entitled to summary judgment. *Id.* at 431.

Here, the incidents of harassment, which we have delineated in detail above, are no more egregious than the statements and actions that we found in *Baskerville* to be insufficient as a matter of law to constitute an objectively offensive environment. Like the plaintiff in *Baskerville*, Rogers can prove little more than that she encountered a number of offensive comments over a period of several months. Although Rogers, unlike the plaintiff in *Baskerville*, experienced one incident of physical contact when Kelenyi caught her as she appeared to be falling, Rogers herself admits that she looked to be falling when Kelenyi caught her, and she does not argue that Kelenyi's touching of her was in any way sexual. We thus place little emphasis on this occurrence. Moreover, this case is even less severe than *Baskerville* because only four of the ten incidents Rogers lists were sexual in nature.[1] In short, this case is an even stronger candidate for summary judgment than was *Baskerville*, and we affirm summary judgment as to Rogers's claim for a hostile environment.

## C.  Retaliation

We turn finally to the question of retaliation. Under Title VII, unlawful retaliation occurs when an employer takes an adverse employment action against an employee for

---

[1] Those occurrences were Kelenyi's: (1) comment about the FOP book; (2) asking Rogers whether she had a boyfriend or needed one; (3) comment about Rogers's breasts; and (4) telling Rogers that he wanted to watch her walk across the room and put a document in a box.

opposing impermissible discrimination. *Fine v. Ryan International Airlines*, 305 F.3d 746, 751 (7th Cir. 2002) (citing 42 U.S.C. § 2000e-3). Rogers argues primarily that one action, her placement in the BAP, ostensibly for "excessive medical usage," constituted retaliation under Title VII. She also mentions "other retaliatory actions to which [she] was subjected [including] the form of her assignments, denial of special assignments, and harassment by Schrager while on medical [leave]." The district court granted summary judgment as to retaliation because "the evidence does not support the inference that Rogers was being singled out."[2] We agree.

A plaintiff has two means of proving Title VII retaliation: the "direct method" and the "indirect method." *Logan v. Kautex Textron N.A.*, 259 F.3d 635, 638-39 (7th Cir. 2001) (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). Under the direct method, there are two types of permissible evidence. First, there is direct evidence; i.e., evidence that, if believed by the trier of fact, would prove the fact in question "without reliance on inference or presumption." *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001) (quoting *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999)). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Needless to say, such admissions are rarely encountered. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 576 (7th Cir. 2001). The second type of evidence permitted under the direct

---

[2]  Rogers does refer to other incidents of retaliation in her reply brief, but we shall not consider argument withheld until the reply brief; Rogers is limited to the arguments made in her opening brief. *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir. 1990).

method is circumstantial evidence; i.e., evidence that allows a jury to infer intentional discrimination by the decisionmaker. *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001); *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 396 (7th Cir. 1997). Construed liberally, Rogers's arguments before both the district court and on appeal encompass both the direct and indirect methods.

The City argues, simply because Rogers lacks direct evidence, that the direct method is unavailable to her, and that she must therefore proceed under the indirect method. This contention is incorrect as a matter of law because, as discussed above, plaintiffs may proceed under the direct method provided that they adduce *either* direct evidence *or* circumstantial evidence that would entitle a jury to conclude that the employer acted because of a forbidden animus. There are several cases that arguably conflate the direct method with direct evidence. *See, e.g., Grayson v. City of Chicago*, ___ F.3d ___, No. 01-2001, 2003 WL 175658, at *2 (7th Cir. Jan. 28, 2003) (stating that the plaintiff "has no direct evidence of discrimination and so proceeds under the burden-shifting mechanism of *McDonnell Douglas*"). While the terms "direct method" and "direct evidence" are similar, we reemphasize here that use of direct evidence is merely one of two means (the other being the use of circumstantial evidence) of proceeding under the direct method. *See Sheehan v. Daily Racing Form*, 104 F.3d 940, 941 (7th Cir. 1997).

Bearing those principles in mind, we must determine whether Rogers is entitled to reach a jury under the direct method of establishing retaliation. Rogers puts forth no direct evidence of retaliation. That is to say, Rogers has no evidence that a decisionmaker essentially admitted that he took action against Rogers because she complained of discrimination.

Rogers does, however, point to circumstantial evidence in the form of the deposition testimony of Sgt. Bradford Woods. Woods worked under Commander William Powers, who oversaw the BAP, and testified that Schrager had recommended Rogers's placement in the program to Powers. The problem with Rogers's position is that, as discussed above, under the direct method a plaintiff must provide direct or circumstantial evidence that the *decisionmaker* has acted for a prohibited reason. A decisionmaker is the person "responsible for the contested decision." *Chiaramonte*, 129 F.3d at 396. In this case, as Rogers admits, Powers's Personnel Division, and not Schrager, placed her in the BAP. Nonetheless, if there were competent evidence that the Personnel Division had acted as Schrager's "cat's-paw" and rubber-stamped his recommendation, we would consider Schrager to be the decisionmaker regarding Rogers's placement in the BAP. *See Mateu-Anderegg v. School Dist. of Whitefish Bay*, 304 F.3d 618, 624 (7th Cir. 2002). Rogers, however, points to no evidence that Schrager was in any sense responsible for that decision. The circumstantial evidence pertaining to his motives is therefore irrelevant under the direct method. Because Rogers delineates no other evidence pertaining to the direct method, she is not entitled to reach a jury under that means of proving retaliation.

We now turn to the question of whether there is an issue of fact under the indirect method. There has been a recent clarification as to how a plaintiff goes about proving retaliation under the indirect method. In *Stone v. City of Indianapolis*, 281 F.3d 640 (7th Cir. 2002), reviewed by the full court under Circuit Rule 40(e), we enunciated a new rule for proving retaliation under the indirect method in this circuit. Under S*tone*, a plaintiff must

> show that after filing the [complaint of discrimination] only he, and not any similarly situated employee who

did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial.

*Id.* at 644. This clarified rule is a variation of the familiar burden-shifting method found in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), and eliminates the requirement, noted in some of this circuit's earlier decisions, that the plaintiff prove a "causal link" between his protected action and an adverse employment action. *Stone*, 281 F.3d at 642-44.

Rogers does not follow the method mandated by *Stone*, but instead briefs extensively the issue of whether there was a causal link between her placement in the BAP and her complaint of discrimination. There are several cases, some of which were published since *Stone* was issued, that followed the former rule for adjudicating retaliation cases and required evidence of a causal link. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 772-73 (7th Cir. 2002); *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1008 (7th Cir. 2002). Nevertheless, *Stone* provides the governing rule in this jurisdiction, a rule that makes proof of a causal nexus irrelevant. Rogers, however, cannot meet even the more lenient strictures we set forth in *Stone*.

Under the indirect method as enunciated in *Stone*, Rogers must first establish a prima facie case. One of the elements of that case is that only she, "and not any otherwise similarly situated employee who did not complain, was . . . subjected to an adverse employment action." *Stone*, 281 F.3d at 642. A similarly situated employee is one who

is "directly comparable to [the plaintiff] in all material respects." *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002). Rogers maintains that she has satisfied this element of the prima facie case because no other officer in the 24th district was placed in the BAP and because "another female officer, without pending discrimination charges and greater medical usage" was not placed in the BAP. The former assertion does not help Rogers because, even if it were true, she does not cite evidence demonstrating that any of the other officers within the 24th district were directly comparable to her in all material respects. Regarding the latter contention, in support of that statement Rogers cites to one exhibit that was before the district court. All this exhibit shows, however, is that there was one other female officer in the Department who had seven more medical incidents than did Rogers. This exhibit would tell a jury nothing about whether that other officer was similarly situated to Rogers in any other respect. A jury could not know from this evidence, for example, whether the circumstances within which the other officer took sick leave were similar to the circumstances in which Rogers took leave, whether that officer was ever placed in the BAP and, most importantly, whether the other officer had not, as Rogers claims, filed a complaint of discrimination. Rogers fares no better with regard to her claim that she was retaliated against by being subjected to poor "assignments, denial of special assignments, and harassment by Schrager while on medical [leave]." As to each of these alleged instances of retaliation, she fails to point to evidence from which a reasonable jury could conclude that she was treated differently than a similarly situated employee who did not complain of sexual harassment. When plaintiffs proceeding under the burden-shifting formula of *McDonnell-Douglas* cannot produce competent evidence that they were treated

differently than similarly situated employees, we must affirm the granting of summary judgment on that basis. *See, e.g., Grayson,* 308 F.3d at 819; *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 614-15 (7th Cir. 2001). Therefore, we affirm the district court's summary judgment as to Rogers's retaliation claim.

## III.

Rogers fails to explain why the district court's evidentiary rulings prejudiced her substantial rights, and we therefore decline to disturb the district court's judgment on evidentiary grounds. Because Rogers adduces no evidence from which a jury would be entitled to find that she suffered an objectively offensive environment, we affirm summary judgment as to her claim for sexual harassment. Finally, because Rogers does not produce evidence sufficient to establish retaliation either by the direct or indirect method, we affirm summary judgment as to Rogers's theory of retaliation.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*