Vincent Ronald TORAN,
Plaintiff–Appellant,

v.

Daryl BZDAWKA, et al., Defendants–
Appellees.

No. 02–4040.

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 2003.

Decided July 11, 2003.

Before BAUER, MANION, and DIANE P. WOOD, Circuit Judges.

## ORDER

After being fired from his job as a plumber for Milwaukee County, Vincent Ronald Toran sued the County and two county employees, claiming that the defendants violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* by firing him because of his race (African–American) and in retaliation for filing discrimination complaints against the County. He also brought a claim under 42 U.S.C. § 1983, alleging that his discharge violated his Fourteenth Amendment rights to equal protection and procedural due process. The suit proceeded to trial, where the district court entered judgment for the defendants at the close of Toran's case. Toran appeals, arguing that he presented sufficient evidence to withstand judgment as a matter of law. Because Toran failed to provide evidence to support his claims, we affirm.

## I

In 1990 Toran began working as a plumber for the Milwaukee County Department of Public Works. In 1994 he filed several discrimination complaints, one with the EEOC and one with the County. (The record does not reflect the nature of the conduct that prompted his complaints.) According to Toran, because of those complaints and because he is African–American, various Department of Public Works employees later took a series of disciplinary measures against him and ultimately terminated him.

Toran pointed, for example, to the fact that at some point after he filed his complaints, his supervisor blamed him for improperly installing a piece of equipment on a day that Toran was not even at work. On another occasion, a video taken of Toran in the lunchroom was used to support a charge that he wasted his time at work. On the basis of the video, in September 1997 defendant Daryl Bzdawka, the director of facilities management for the Department of Public Works, filed a written complaint seeking to fire Toran for "not performing the duties of his assigned position in excess of 21.0 hours." Instead of termination, however, that complaint led to a settlement agreement between Toran and the Milwaukee County Personnel Review Board. The agreement imposed a 35–day suspension without pay and a reevaluation period lasting "2,080 straight time hours ... for the charges enumerated in the complaint." If, during the reevaluation period, Toran violated the same rules that prompted the complaint against him, he would be fired without a hearing before the Personnel Review Board.

During the reevaluation period, Toran used his sick leave on at least five occasions. In September 1998, shortly before the reevaluation period ended, Lawrence Lauer, assistant director of facilities management for the Department of Public Works, fired Toran, claiming that his sick leave absences violated the settlement agreement. But in July 1999 Toran had a hearing before the Personnel Review Board about his termination, and the Board determined that the absences did not violate his settlement agreement because the scope of the agreement was limited to certain behavior unrelated to absenteeism (failing to perform his duties and leaving the workplace without authorization). On this basis, the Board ordered Toran reinstated with back pay.

Thinking the matter resolved, Toran returned to work, but in the middle of his

first day back, Lauer terminated him for the same 1998 absences that had prompted his earlier termination. Toran then had another hearing before the Personnel Review Board, where it considered whether his absences, without reference to the settlement agreement, warranted his termination. The Board concluded, based on the evidence submitted at Toran's previous hearing, that he had violated the department's sick leave policy by incurring "five incidents of absence in calendar year 1998." The Board then concluded that Lauer had discretion about what the maximum penalty for a sick leave violation should be. Given Toran's history, the Board concluded that "the overall circumstances justified the penalty of discharge."

Shortly thereafter (August 1999), Toran filed an EEOC complaint claiming that the County fired him because of his race. In May 2000, after receiving his right-to-sue letter, Toran filed his complaint in the district court, naming as defendants Milwaukee County, Bzdawka (by this time retired), and county employee Thomas C. Kenney (the deputy director of the Department of Public Works). The court initially dismissed Toran's suit for failure to prosecute, but later reopened it after Toran served the defendants with process in January 2001. The defendants then moved to dismiss Toran's complaint because they had not been served until 248 days after Toran filed his complaint–well beyond the 120–day limit under FED. R. CIV. P. 4(m). The district court denied their motion based on an earlier order extending Toran's period of time for service of process because he had shown good cause for his delay. Later the court granted the defendants' motion to postpone trial so that they could file a motion for summary judgment, but they never did so.

At a bench trial in October 2002, Toran presented his evidence through his own

testimony and several exhibits. He tried repeatedly to admit a report authored by county employee Lorretta Robinson, who had investigated the discrimination complaint he filed against the County in 1994. Toran testified that Robinson's report included a finding that the County discriminated against him, though he did not elaborate on the basis for the finding. The court sustained the defendants' hearsay objection to the report and struck Toran's testimony about the report's finding.

Toran also testified about his reprimands for absenteeism and his opinion that they had been motivated by his race. He acknowledged that he had been absent five times in 1998 and admitted that he had received several warnings about his use of sick time before he was fired, including an official reprimand. He also admitted that many employees (in the words of defense counsel, "black, white, Hispanic . . . the whole spectrum of human beings") had been counseled for excessive absenteeism. But Toran explained that even though others had been counseled about their use of sick time, he did not know of any other plumbers or white employees that had been specifically charged with or fired because of excessive absenteeism.

Toran rested his case after again seeking unsuccessfully to admit Robinson's 1994 investigation report. At that point, the defendants–apparently intending to argue that Toran had failed to prove his case–announced that they moved "to dismiss." Before the defendants could explain the basis for this motion, the court granted it, explaining its decision as follows:

> The plaintiff in this case has proven nothing. Absolutely nothing. I'm not even clear as to what the plaintiff is asserting as a claim. The plaintiff has shown that he was terminated. The plaintiff has shown that he was a party

to a number of proceedings before the personnel review board, that he was reinstated, that he signed an agreement and that he was subsequently terminated after signing that agreement.

The plaintiff has shown that he has a defective memory.

... If he's claiming that he was singled out because of his race how can he show that he was treated differently from other people when he doesn't know who was terminated.

....

... The case is dismissed.

The court entered judgment the same day, with the following explanation: "At the conclusion of plaintiff's testimony, he rested his case. As set forth on the record, the court granted defendant's motion for judgment as a matter of law because the plaintiff failed to present a prima facie case under 42 U.S.C. § 2000e or 42 U.S.C. § 1983."

## II

On appeal Toran argues that the district court erred by dismissing his claims under both Title VII and § 1983 and also erred by refusing to admit Loretta Robinson's 1994 report finding that the County discriminated against him. The defendants, for their part, maintain that the suit should have been dismissed much earlier because Toran failed to serve them with process within the time allowed by FED. R. CIV. P. 4(m).

### A

Neither side identifies the rule that authorized the district court to enter judgment as a matter of law, nor did the district court explicitly provide a basis for its ruling. The cases cited by the parties suggest that they believe the district court granted the defendants judgment as a matter of law under FED. R. CIV. P. 50(a). But that rule by its terms applies only to jury trials; the corresponding rule for a bench trial is Rule 52(c). *Rego v. ARC Water Treatment Co.*, 181 F.3d 396, 401 (3rd Cir.1999) ("Rule 50(a) applies in jury trials and Rule 52(c) applies in non-jury trials."). The latter rule authorizes a district court to enter judgment as a matter of law against a party after the "party has been fully heard on an issue and the court finds against the party on that issue," provided the court's judgment is "supported by findings of fact and conclusions of law." FED. R. CIV. P. 52(c).

Although the district court here did not make formal findings of fact and conclusions of law before it entered judgment for the defendants, neither party has quarreled about that fact before this court. Moreover, Rule 52(a) deems the court's findings and conclusions sufficient if they are "stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court." *Id.* at 52(a). Here, the court did explain itself in oral comments to the parties at the close of Toran's case. Those comments show that the court found that even if Toran's testimony were factually sound, the testimony did not support his claims. Taking into account the lack of any objection here to the quality of the court's compliance with Rule 52(c), we think that there is enough here for us to review the court's factual conclusion about Toran's case. That is, we will review the court's factual findings for clear error and will set aside the judgment only if, after reviewing the record, we are certain to the usual degree of certainty that the district court made a mistake. *See Collins v. Ralston Purina Co.*, 147 F.3d 592, 599 (7th Cir.1998).

### B

On the merits, Toran argues that the district court erred by entering judgment

for the defendants because he established a *prima facie* case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). He claims that he made out a *prima facie* case with evidence that he is African–American; that he was fired without a hearing; that no white employees were charged with excessive absenteeism; and that he was not in fact guilty of excessive absenteeism.

We can dispose easily of Toran's Title VII claims against the individual defendants: he cannot maintain them, because under Title VII there is no personal liability for an individual defendant who is not herself the "employer." *See Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 494 (7th Cir.1998). Here, Milwaukee County was Toran's employer. The remainder of our discussion of his Title VII claims thus applies only to the County.

■ In order to prevail at trial, Toran had to introduce some evidence that would have allowed the trier of fact to find discrimination or retaliation. In the absence of direct evidence of discrimination (which Toran lacked), the most common way of doing so is to identify a similarly situated employee outside of the protected class who was treated more favorably than the plaintiff. *See, e.g., Grayson v. O'Neill*, 308 F.3d 808, 817–18 (7th Cir.2002). This person must be "directly comparable to [plaintiff] in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002). Toran claims that he did so, pointing to his testimony at trial that he did not know of any white employees who were either formally charged with or fired for excessive absenteeism. But this falls woefully short of what is required: it does not even specifically identify another employee, let alone someone who is "comparable ... in all material respects." *Id.*

Alternatively, Toran claims that the court could have found for him on the basis of his evidence tending to show that he did not violate the workplace rule for which he was disciplined. He reasons that the Personnel Review Board's first order reinstating him must logically have rested on a determination that he was not guilty of excessive absenteeism. But a review of the two hearings demonstrates otherwise. The Board concluded (and Toran admitted) that he had "incurred five incidents of absence in calendar year 1998." At his first hearing, the Board determined only that the absences did not violate the settlement agreement. At his second hearing, it found that, apart from the agreement, Lauer still had discretion to fire Toran for his absenteeism. Although one can understand why Toran may have been confused, the fact remains that the Personnel Board was addressing two different things: first, whether Toran's absenteeism constituted a breach of the settlement agreement warranting termination, and second, whether the absenteeism provided other grounds for discharge (without reference to the settlement agreement). This may have been unfair, and Toran may have been sandbagged by the Board, but there is nothing to suggest that its actions were motivated by his race.

C

■ Toran next contends that he introduced enough evidence on the topic of retaliatory discharge to permit judgment in his favor. Without elaboration, he claims that he did so by demonstrating that after filing two discrimination complaints–one with the EEOC and one with the County–he "was falsely accused of excessive absenteeism ... and was subsequently discharged on a pretextual basis." The defendants respond that Toran's retaliation claim is not properly before the

court because he did not include it in his EEOC complaint.

Generally a plaintiff may bring only those claims under Title VII that were included in the original EEOC charges. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir.2002). In his EEOC charge, Toran alleged only that the County discriminated against him on the basis of race by terminating him in 1999. He did not check the box on the form indicating retaliation, and when explaining the basis for his claim he did not mention engaging in any protected activity that would support a retaliation charge. Finally, Toran's retaliation claim was not so closely related to his EEOC charge that the County should have realized that both types of claims were being asserted against it. This claim was not properly before the court, and Toran cannot resuscitate it now. Furthermore, even if it were not procedurally barred, the claim would fail for the same reason as his discrimination claim did–he provided no evidence that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir.2003); *Rogers v. City of Chicago*, 320 F.3d 748, 754–55 (7th Cir.2003) (quoting *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir.2002)).

### D

■ We now turn to Toran's claims under 42 U.S.C. § 1983. First, he contends that the evidence for his Title VII discrimination claim also supports his claim that the defendants discriminated against him in violation of his equal protection rights. Second, he suggests in cursory fashion that he has demonstrated that the defendants violated his procedural due process rights because he had a property interest in his job and was thus entitled to "due process protections" before being fired. The defendants respond (albeit in their jurisdictional statement) that this case did not involve § 1983 because there is no *respondeat superior* liability under § 1983; thus, the argument goes, Toran would have had to sue the Personnel Review Board directly to vindicate any alleged constitutional violations.

The defendants are right in one respect. Toran has not sued any of the individual defendants who were responsible for the loss of his job or for the procedures that were used in conjunction with that event. He has not explained how either of the individual defendants was involved in his termination, other than to note that Bzdawka signed the 1997 charges prompting the settlement agreement, which is not enough on its own. Thus, the individual defendants before us have no liability under § 1983. *See, e.g., Doyle v. Camelot Care Cntrs., Inc.*, 305 F.3d 603, 614 (7th Cir.2002) (§ 1983 claim only appropriate where defendant is personally involved in alleged constitutional deprivation).

This does not mean, however, that he could not sue the County. Because there is no *respondeat superior* liability under § 1983, *e.g., White v. City of Markham*, 310 F.3d 989, 997 (7th Cir.2002), Toran had to establish that the County had a policy or custom that caused his alleged constitutional deprivations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002); *Bennett v. Roberts*, 295 F.3d 687, 699 (7th Cir.2002). Toran adduced no such evidence at trial, nor does he attempt to salvage this claim otherwise on appeal, so there is no basis for his § 1983 claims against the County.

## E

Finally, Toran argues that the district court erred by refusing to admit Loretta Robinson's report from her 1994 investigation into Toran's discrimination complaint against the County, and that if that record had only been considered, his claim could have prevailed. His position is that the report should have been admitted as a public record under Federal Rule of Evidence 803(8)(C). Toran protests that the district court did not consider the public record exception, but he never explains how the report would have affected the outcome of the trial or why it was "relevant." *See Hasham v. Cal. State Bd. of Equalization,* 200 F.3d 1035, 1049 (7th Cir. 2000) (even if district court abused discretion this court will not disturb its evidentiary rulings absent "a significant chance ... that they affected the outcome of the trial"). We review these kinds of evidentiary rulings in any event only for abuse of discretion, and we find no abuse in the district court's decision to exclude this somewhat remote document. *See Rogers,* 320 F.3d at 751.

## III

In light of our conclusions on the merits, it is unnecessary for us to reach the question whether the district court should have dismissed Toran's suit for untimely service. The judgment of the district court is AFFIRMED.