THE AMBER PYRAMID, INC., d/b/a
Cousin Morris' New Orleans Treats,
et al., Plaintiffs–Appellants,

v.

BUFFINGTON HARBOR RIVER-
BOATS, L.L.C., and the Methodist
Hospitals, Inc., Defendants–Appellees.

No. 03–3517.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 16, 2004.

Decided Feb. 11, 2005.

Verlanteree Hare, Chicago, IL, for Plaintiffs–Appellants.

Jennifer L. Deboer, Johnson & Rappa, R. Lawrence Steele, Hodges & Davis, Merrillville, IN, for Defendants–Appellees.

Before RIPPLE, EVANS, and SYKES, Circuit Judges.

## ORDER

Olivia Chase, Nona Ocloo, and The Amber Pyramid initiated this lawsuit against Buffington Harbor Riverboats and The Methodist Hospitals, alleging, as relevant to this appeal, race discrimination and wrongful termination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The suit brings together unrelated claims that were originally connected by an allegation of civil conspiracy. The district court granted summary judgment for Buffington and Methodist, and the plaintiffs now appeal.

We state the pertinent facts in the light most favorable to the plaintiffs. Chase and Ocloo are African–American sisters who incorporated Amber Pyramid, which produces baked goods and operated a food kiosk on property managed by Buffington. Buffington, a joint venture of Majestic Star Casino and Trump Casino, oversees the land-based facilities adjacent to the casinos' riverboat gambling operations in Gary, Indiana. Amber Pyramid entered into a one-year lease with Buffington that began in July 1998 and included an option to renew in successive years at higher rents. Amber Pyramid was required to give written notice of its intent to renew 60 days before the end of the lease term.

During the initial lease term, Chase and Ocloo concluded that Buffington was treating Amber Pyramid less favorably than a white-owned pizza vendor leasing space from Buffington. As a result Amber Pyramid sought to renegotiate the terms of its lease near the end of the first year. Negotiations dragged on for months, even after the initial lease term had ended. Buffington, however, refused to accept proposed changes, in particular a reduction of the hefty second-year rent increase provided for in the parties' original agreement. Amber Pyramid continued to operate during the negotiations, but when it failed to pay full rent for several months, Buffington sued in the United States District Court for the Northern District of Indiana. That case, *Buffington Harbor River Boats, L.L.C. v. The Amber Pyramid, Inc.*, No. 2:00CV194JM, ended with Amber Pyramid agreeing to remove its food kiosk in June 2000. Afterward, though, Amber Pyramid and its stockholders brought suit in state court claiming that Buffington engaged in continuous discrimination throughout the companies' relationship and eventually terminated Amber Pyramid's lease because Chase and Ocloo are African–American, in violation of 42 U.S.C. §§ 1981 and 1982. Buffington removed the action to federal court.

Meanwhile, as the complaint against Buffington proceeded, Ocloo became involved in a different dispute with Methodist Hospitals where she had been working since 1993. Ocloo's job involved providing help with the personal and work-related problems of employees whose companies were contract customers of the hospital. During 2001, Ocloo used a hospital computer to access a client company's personnel records without authorization in order to warn one of the client's employees that the man she was dating—a former client of Methodist's—was thought by Ocloo to be a child abuser. After an internal investiga-

tion, Ocloo's supervisor, Paul Courtois, recommended that Methodist terminate her for contacting a client's employee without authorization and accessing the client's records for reasons unrelated to her duties as an employee assistance counselor. The hospital accepted the recommendation and terminated Ocloo in October 2001. Ocloo challenged the termination in a complaint to the EEOC and received her right-to-sue letter in March 2002. She then amended the complaint in the lawsuit against Buffington to add claims of race discrimination against Methodist, which until then was not a defendant. At the time Ocloo justified joining Methodist by alleging that Buffington played a role in the decision to fire her, but no evidence of a connection between the two defendants ever was presented.

The plaintiffs' second amended complaint includes eight counts, of which three remain at issue in this appeal. Count 1 claims, under §§ 1981 and 1982, that Buffington engaged in race discrimination against Amber Pyramid, Chase, and Ocloo. Count 2 alleges that Methodist discriminated against Ocloo because of her race in violation of § 1981, and Count 7 repeats this claim under Title VII. Buffington and Methodist separately moved for summary judgment, which the court granted, concluding that the plaintiffs presented no evidence of discrimination.

On appeal Amber Pyramid, Ocloo, and Chase argue that the district court erred in granting summary judgment for Buffington on their discrimination claims. They make no mention of § 1982 and thus abandon reliance on that statute, leaving only § 1981 for our consideration on their appeal. *See Palmer v. Marion County,* 327 F.3d 588, 597–98 (7th Cir.2003). In addition Ocloo contends that the district court erred in granting summary judgment for Methodist on her § 1981 and Title VII discrimination claims.

We review a grant of summary judgment de novo, *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 885 (7th Cir.2001), and construe the facts in the light most favorable to the non-moving parties, *Franzoni v. Hartmarx Corp.,* 300 F.3d 767, 771 (7th Cir.2002). The non-moving parties, however, must rely on more than mere assertions and must present specific facts in order to establish a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ We begin with the plaintiffs' case against Buffington. Ocloo and Chase, as shareholders of Amber Pyramid, have no stake in the discrimination claim against Buffington because shareholders lack standing to sue third parties for indirect damages resulting from injuries to corporations. *See Flynn v. Merrick,* 881 F.2d 446, 449 (7th Cir.1989); *Kush v. Am. States Ins. Co.,* 853 F.2d 1380, 1383 (7th Cir.1988). The contract at issue in this appeal is between Amber Pyramid and Buffington. Though Amber Pyramid may itself maintain a suit under § 1981, *see Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1057–60 (9th Cir.2004); *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.,* 295 F.3d 1065, 1072 (10th Cir.2002); *see also Triad Assocs., Inc. v. Chi. Hous. Auth.,* 892 F.2d 583, 590–91 (7th Cir.1989) (discussing corporate standing in context of § 1983 claims), *overruled on other grounds, Bd. of County Comm'rs v. Umbehr,* 518 U.S. 668, 673, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996), Ocloo and Chase are not proper parties to the § 1981 claim arising from the contract, *see Kyles v. J.K. Guardian Sec. Servs., Inc.,* 222 F.3d 289, 303 (7th Cir.2000) ("The class of persons who may bring [a § 1981] suit is therefore limited to

persons who actually wish to enter into (or remain in) that [contractual] relationship."). Accordingly, Amber Pyramid is the only appellant we will discuss with respect to the claims against Buffington.

■ Amber Pyramid theorized that, because its shareholders are black, Buffington extended preferential treatment to a white-owned competitor. To establish a § 1981 claim, a plaintiff may proceed either by providing direct evidence of discrimination, *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir.2004), or by showing indirect evidence under the burden-shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Amber Pyramid proceeded on an indirect theory. Although the *McDonnell Douglas* analysis was developed for Title VII employment discrimination claims, its analytical approach is applicable to § 1981 discrimination claims as well. *See Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir.1999).

A *McDonnell Douglas* analysis is undertaken in three stages, beginning with the plaintiff establishing a prima facie case for discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. In a contract setting, the prima facie case consists of four elements. The plaintiff must show that it (1) is a member of a protected class, (2) satisfactorily performed the contract, (3) suffered an adverse action, and (4) was treated differently than another similarly situated contractor outside the protected class. *See Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir.1996). A minority-owned corporation, like Amber Pyramid, assumes an "imputed racial identity" from its shareholders, *see Thinket Ink*, 368 F.3d at 1059, and there is no dispute the company was adversely affected by the loss of its lease. The district court, though, held that Amber Pyramid failed to produce evidence on the second and fourth elements of its prima facie case. We agree.

As to the second element, Amber Pyramid's admitted failure to fully pay the rent due constituted a failure to meet Buffington's legitimate contractual expectations. *See Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 570 (7th Cir.1989) (interpreting contractual obligations as synonymous with legitimate expectations). And as to the fourth prong, Amber Pyramid never identified a similarly situated vendor that was treated more favorably in its dealings with Buffington. *See Bratton*, 77 F.3d at 176. To establish that someone, or some company, is similarly situated, "a plaintiff must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002); *see Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617 (7th Cir.2000). Amber Pyramid, a baked-goods vendor, compares itself to the pizza vendor. Chase and Ocloo, relying strictly on personal observations, testified by deposition that the pizza vendor received, among other things, better parking privileges for its employees, a cash register necessary for processing coupons distributed to casino patrons, and the right-of-first-refusal to sell Polish sausages. But it is not enough to point to another food vendor and say that the terms offered it were different. Amber Pyramid never introduced into evidence the contract between Buffington and the pizza vendor, and indeed there is no admissible evidence that the pizza vendor was subject to the "same standards" as Amber Pyramid. *Radue*, 219 F.3d at 618 (describing the qualities shared by similarly situated individuals). In the absence of such evidence regarding the pizza vendor's relationship with Buffington, the different treatment highlighted by Amber Pyramid

could legitimately arise from the value paid by the pizza vendor for its contract or because of its longer tenure. Either might make direct comparison between the two vendors inappropriate for purposes of the *McDonnell Douglas* test. The district court, therefore, properly determined Amber Pyramid could not make-out a *prima facie* case and granted summary judgment for Buffington.

What is left is Ocloo's wholly unrelated case against Methodist, which she claims subjected her to a hostile work environment and eventually fired her because of her race. Her evidence was sparse. During her time at Methodist, Ocloo says that her supervisor, Courtois, made two separate statements that expressed a negative attitude toward blacks: a general statement that "[B]lack Muslims preach a lot of hate" and a more specific comment that "Jesse Jackson has no right to be in Gary" to hold a rally in support of striking Methodist employees. Ocloo also testified at her deposition that, unlike her white colleagues, she was required to perform manual labor, required to share an office space, excluded from intern mentoring, assigned to travel to dangerous neighborhoods, deprived of long-time clients, and excluded from a lunch conversation that included a discussion of the racial backgrounds of the participants. Although she brought her employment claims under § 1981 and Title VII, both are analyzed under the same framework. *Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.3d 1021, 1028 (7th Cir.2004). Moreover, the facts underlying both her hostile work environment and termination claims are complementary and thus can be discussed together.

In the district court, Ocloo relied on *Troupe v. May Dep't Stores Co.*, 20 F.3d 734 (7th Cir.1994), and argued her discrimination claims under the direct method of proof. We, therefore, may limit our re-

view to that theory, rather than analyzing the claims under the indirect method. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1005 n. 5 (7th Cir.2000).

To prove discriminatory discharge under the direct method, a plaintiff must show either an admission of racial animus by the decision-maker, *see Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir.2003), or a "convincing mosaic of circumstantial evidence" pointing "directly to a discriminatory reason for the employer's action," *Rhodes*, 359 F.3d at 504 (quotation marks and citations omitted). In contrast, to prove that he was subjected to a racially hostile work environment, a plaintiff must establish that the environment was "sufficiently severe or pervasive 'to alter the conditions of employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (citation omitted). He "must show that (1) he was subject to unwelcome harassment, (2) the harassment was based on his race, (3) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive working environment that seriously affected his psychological well-being, and (4) there is a basis for employer liability." *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir.2004). Moreover, the third prong is "both a subjective and objective inquiry, compelling the court to ask whether a reasonable person would find the environment hostile." *Robinson v. Sappington*, 351 F.3d 317, 329 (7th Cir.2003); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Considering the evidence in the light most favorable to Ocloo, the district court correctly held that she did not meet her burden of establishing any disputed issues of fact material to her discrimination claims. The comments Courtois allegedly made about African–Americans were iso-

lated and bore no relation to the termination proceedings, and are therefore not direct evidence of wrongful termination. *See Haywood v. Lucent Tech., Inc.,* 323 F.3d 524, 530 (7th Cir.2003). Likewise, the isolated comments could not alone have made the working environment hostile. *See Hrobowski,* 358 F.3d at 477 n. 2. Moreover, Ocloo's remaining complaints about her working conditions lack any apparent relation to race and thus are unhelpful under the direct method, *see McKenzie v. Milwaukee County,* 381 F.3d 619, 624–25 (7th Cir.2004); *Williams v. Seniff,* 342 F.3d 774, 787–88 (7th Cir.2003); *Shanoff v. Ill. Dep't of Human Servs.,* 258 F.3d 696, 704 (7th Cir.2001), and do not, in any event, rise to the level of being "hellish," which is our standard for the severity of workplace hostility that violates Title VII. *See Rogers,* 320 F.3d at 752 (quoting *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428 (7th Cir.1994)).

AFFIRMED.