Terri NEDZVEKAS, Plaintiff,

v.

LTV COPPERWELD, et
al., Defendants.

No. 03 C 5123.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 17, 2005.

David Porter, Attorney at Law, Chicago, IL, for Terri Nedzvekas, Plaintiff.

Cathryn Elizabeth Albrecht, Jackson Lewis LLP, Darby A. Hills, Jackson Lewis LLP, Chicago, Kurt A. Miller, Thorp, Reed & Armstrong, Pittsburgh, PA, Michael T. Clarke, Kralovec & Marquard, Chartered, William Edward Spizzirri, Kralovec & Marquard, Chartered, Chicago, IL, for LTV Copperweld, LTV Corporation, The doing business as LTV Copperweld, Copperweld Corporation doing business as LTV Copperweld, Defendants.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court is Defendants' Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(f). For the following reasons, Defendants' Motion for Summary Judgment is granted.

## I. BACKGROUND [1]

### A. Facts

From January 2, 1996 until July 30, 2001, Plaintiff Terri Nedzvekas ("Nedzvekas") was employed as an Inside Sales

---

1. The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

Representative for Copperweld Marketing ("CM"). Copperweld Corporation ("Copweweld") had contracted CM to perform marketing and sales services for companies doing business as 'LTV Copperweld.' Between 1996 and 2000, Nedzvekas worked as a salaried employee at the Defendants' Bedford Park facility. Then, in 2000, Nedzvekas was transferred to CM's Chicago location. Between April and July, 2001, CM employed less than fifty employees within a seventy-five mile radius of the Chicago facility. During her course of employment at CM, Nedzvekas reported to Nancy Leyden ("Leyden"), Inside Sales Supervisor, and Jim Cronkhite ("Cronkhite"), Manager of Commercial Administration. Both Leyden and Cronkhite reported to Barry Patterson ("Patterson"), Copperweld's Human Resource Generalist.

Nedzvekas' job responsibilities included selling raw material steel, taking customer orders, and customer service. The majority of her work was done at her desk while on the phone or on the computer. She did not have any interaction with corporate officers in her day to day routine. On April 18, 2001, Nedzvekas asked Leyden if she could take medical leave to undergo foot surgery. Nedzvekas gave the appropriate forms to her treating physician, Dr. Rembos, which he filled out and submitted to CM. On May 18, 2001, Nedzvekas was given a medical leave of absence to undergo surgery on her right foot. According to Dr. Rembos, Nedzvekas' return date would be May 31, 2001.

However, sometime before May 31, Nedzvekas called Leyden and told her that she had an infection in her right foot, and that Nedzvekas had trouble walking because of pain. Nedzvekas did not ask for additional time off due to this impairment. Then, on May 29, 2001, CM sent Nedzvekas a Family and Medical Leave Act ("FMLA") request form to determine how many additional days she would be away from work. Nedzvekas did not complete this form, nor did she return to work on May 31.

On June 18, 2001, when Nedzvekas still had not returned to work, Copperweld retained the services of Dr. Bruce Horton to conduct an independent examination of Nedzvekas. On June 27, 2001, when Nedzvekas went for the exam, Dr. Horton noticed that Nedzvekas walked into his office without difficulty, and that the second toe on her right foot was slightly enlarged, although not swollen. In addition, Dr. Horton stated Nedzvekas' left foot was swollen. Dr. Horton concluded that Nedzvekas was able to return to work.

Copperweld received Dr. Horton's report on Nedzvekas' medical condition on July 2, 2001. That same day, Patterson called Nedzvekas and informed her of Dr. Horton's findings. Nedzvekas responded that her left foot was giving her problems. Patterson said that if she needed more time off, Nedzvekas was required to fill out a medical leave application. She never completed the application, and had surgery on her left foot on July 7, 2001. Two days after the surgery, Dr. Horton tried to schedule a second examination with Nedzvekas, which she refused. After several failed attempts to contact Nedzvekas by phone, Patterson sent her a letter via Federal Express. The letter stated that Copperweld only had limited knowledge of Nedzvekas' injuries; however the information they did have indicated that Nedzvekas was able to work. Nedzvekas never received the letter because she was not home at the time of delivery. Copperweld, on its on initiative, schedule an appointment for Nedzvekas at Dr. Horton's office for July 26.

At the July 26 appointment, Dr. Horton observed that Nedzvekas walked into his office without difficulty. However,

Nedzvekas refused to submit to the examination unless her friend that came with her could attend. Dr. Horton refused this request, and Nedzvekas left his office. Copperweld gave Nedzvekas one last chance to save her job, and scheduled an appointment with Dr. Horton on July 30. If she did not comply with this request, Copperweld would fire her.

Nedzvekas failed to attend the July 30 appointment, and instead had another doctor, Dr. Barbara Bialowolska–Romaniuk ("Dr.Romaniuk") write to Copperweld and inform the company that Nedzvekas suffered from "stress." It is not clear as to the source or cause of her stress. Finally, after repeated efforts to have Nedzvekas examined by a physician, her failure to attend the July 30, 2001 appointment, and sixty days of extended medical leave from her May 31 return date, Copperweld fired Nedzvekas.

## B. Procedural History

Nedzvekas filed her Complaint under the FMLA on July 23, 2003. Defendants filed their Motion for Summary Judgment on December 15, 2004, and Nedzvekas filed a cross-motion for Summary Judgment on December 16. Both Nedzvekas and Defendants filed their respective Responses on January 20, 2005, and their Replies were filed on February 4, 2005. Both parties motions are fully briefed and before the court. In this opinion, the court will analyze the Defendants' Motion for Summary Judgment.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, *see Heft v.*

*Moore,* 351 F.3d 278, 283 (7th Cir.2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. *See Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School,* 278 F.3d 693, 699 (7th Cir.2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. *See Stinnett v. Iron Works Gym/Executive Health Spa, Inc.,* 301 F.3d 610, 613 (7th Cir.2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *See* Fed.R.Civ.P. 56(c); *see also Koszola v. Bd. of Educ. of City of Chicago,* 385 F.3d 1104, 1108 (7th Cir.2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *see also First Nat'l Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 280, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Spiegla v. Hull,* 371 F.3d 928, 935 (7th Cir.2004). The choice between reasonable inferences from facts is a jury function. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. *Ameritech Benefit Plan Comm. v. Communication Workers of Am.,* 220 F.3d 814, 821 (7th Cir.2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. *See Szymanski v. Rite–Way Lawn Maintenance Co.,* 231 F.3d 360, 364 (7th Cir. 2000). Under this standard, "[c]onclusory allegations alone cannot defeat a motion

for summary judgment." *Thomas v. Christ Hospital and Medical Center,* 328 F.3d, 890, 892–93 (7th Cir.2003) (citing *Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

**B. Copperweld Marketing does not have 50 or more employees to come within the scope of the FMLA**

### 1. *The applicable law*

The FMLA states in part, "an eligible employee shall be entitled to a total of 12 work weeks of leave during any 12–month period for one or more of the following:... because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D)(2003). Moreover, the Act only covers specific employees. "The term eligible employee does not include... any employee of an employer... which employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii) (2003). Put another way, the FMLA applies to an "eligible employee," one who works a requisite number of hours, and employers that employ fifty or more people and engage in interstate commerce. *Stoops v. One Call Communications, Inc.,* 141 F.3d 309, 312 (7th Cir. 1998). In order for Nedzvekas to state a cause of action under the FMLA, she must therefore initially establish that CM employed at least 50 people within 75 miles of her office. *See Thomas v. Pearle Vision, Inc.,* 251 F.3d 1132, 1136 (2001) (because defendant employed less than 50 employees within 75 miles of store where plaintiff worked, plaintiff was not eligible employee as defined by the statute).

 In addition, FED. R. CIV. P. 56(e) states: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affir-

matively that the affiant is competent to testify to the matters stated therein." Affidavits offered "in support of or opposition to summary judgment create an issue of fact only to the extent that they provide evidence that would be admissible if offered live on the witness stand." *Watson v. Lithonia Lighting, Nat'l Service Industries, Inc.,* 304 F.3d 749, 751–52 (7th Cir. 2002). Furthermore, "self-serving statements contained in an affidavit will not defeat a motion for summary judgment when those statements are 'without factual support in the record.'" *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 503 (7th Cir.2004) (quoting *Albiero v. City of Kankakee,* 246 F.3d 927 (7th Cir.2001)). However, a self-serving affidavit supported by facts in the record can create a genuine issue of material fact. *Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir.2003). The record "may include the affidavit itself, providing that the affidavit meets the usual requirements for evidence on summary judgment including the requirement that it be based on personal knowledge." *Id.* The trial judge has broad discretion to disregard an affidavit on summary judgment. *See Corder v. Lucent Technologies, Inc.,* 162 F.3d 924, 927 (7th Cir.1998).

 Lastly, the court points out that the number of employees at a given company is not an issue that is taken lightly. It is often a troubling aspect of a case, and the United States Supreme Court has addressed the issue as a result. *See Walters v. Metro. Educ. Enterprises, Inc., et al.,* 519 U.S. 202, 206, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997). When the high court of the land speaks, the district court surely listens. The "test to determine when an employer 'has' an employee is whether the employer has an employment relationship with the individual on the day in question." *Walters,* 519 U.S. at 206, 117 S.Ct. 660. This test is "generally called the 'payroll

method,' since the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." *Id.* Furthermore, "the Department of Labor has likewise adopted the payroll method under the Family and Medical Leave Act of 1993." *Id.* at 207, 117 S.Ct. 660.

### 2. Nedzvekas' claim under the FMLA

■ Here, Nedzvekas has not established that CM employed 50 employees at her office during the time of Nedzvekas' employment. She is vague as to the actual company that she worked for, and her desk job did not give her personal knowledge as to the corporate structure of CM or any other Defendant. In her Complaint, Nedzvekas claims that "Defendant LTV Copperweld, The LTV Corporation d/b/a LTV Copperweld, and Copperweld Corporation d/b/a LTV Copperweld, are interrelated foreign corporations." Compl., ¶ 4. Nedzvekas offers no factual support for this claim. Moreover, Nedzvekas does not name CM in her Complaint.

In addition, Nedzvekas' assertion that CM employed over 150 employees is directly contradicted by Robert Janesko ("Janesko"), Treasurer of Copperweld Corporation, who had personal knowledge as to Defendants' corporate structure. Janesko stated that "Copperweld Marketing and Sales Company is an independent marketing company contracted to perform marketing and sales services for companies doing business as 'LTV Copperweld.'" Def.'s Resp., Ex. 1, ¶ 4. In addition, Janesko stated that "from May to July 2001, 'LTV Copperweld' was a fictitious name by which certain companies affiliated with Copperweld Corporation do business, 'LTV Copperweld' has thus never employed any individuals." *Id.*, ¶ 5. Furthermore, Teresa Pierce ("Pierce"), the Copperweld Corporation's Manager of Human Resources stated that "one of Copperweld's subsidiaries is Copperweld Market-

ing and Sales Company." Def.'s Resp., Ex. 2, ¶ 4. Defendants have therefore provided competent evidence in the form of testimony based on personal knowledge to establish that CM employed less than 50 employees within a 75 mile radius.

Nedzvekas, on the other hand, does not submit any evidence, in the form of affidavits or corporate business forms, to meet her burden to show CM employed 50 people. The only evidence Nedzvekas provides is her own affidavit, where she claims that when she was employed by LTV Copperweld and Copperweld Corporation, Copperweld Corporation employed 150 employees, and that CM was and is a division of Copperweld Corporation. Pl.'s Resp., Ex. qq, ¶ 4. Nedzvekas provides no factual support to her claim that CM employs 50 employees. Whether Copperweld Corporation may have employed over 150 employees is irrelevant, because CM is a completely separate entity. "Summary judgment is appropriate if the pleadings... and affidavits show that there is no genuine issue of material fact." *Salvadori v. Franklin School Dist.*, 293 F.3d 989, 996 (7th Cir.2002). Her unsupported affidavit, without more, is insufficient to create a genuine issue of material fact as to the number of employees at CM. "Self-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir.2004), citing *Buie*, 366 F.3d at 504. Nedzvekas' argument is merely an allegation, which is insufficient to defeat a summary judgment motion. *See Salvadori*, 293 F.3d at 996.

■ In addition, Nedzvekas claims that CM is a division of Copperweld Corporation, and therefore CM is affiliated with Copperweld Corporation. Pl.'s Resp., Ex. qq, ¶ 3. There are three situations in which the court will consider affiliated entities as

a single employer: (1) where the conditions for piercing the corporate veil are present, (2) small entities are created for the sole purpose of avoiding liability; or (3) where the affiliate directs the discriminatory act, practice, or policy. *Papa v. Katy Industries, Inc.*, 166 F.3d 937, 940–43 (7th Cir.1999). None of these situations are present in Nedzvekas' case. First, Nedzvekas has not presented evidence of joint ownership or control of Copperweld Corporation and CM, or joint ownership of assets to warrant piercing the corporate veil. Second, there is no evidence in the record that demonstrates that Copperweld Corporation restructured itself to avoid compliance with employment discrimination laws. Lastly there is no evidence to show that Copperweld Corporation directed CM to engage in any discriminatory practice. In fact, Copperweld Corporation gave Nedzvekas two whole months to return to work, long after her May 31 return date. The company even rescheduled several doctors appointments for Nedzvekas, which she refused to attend.

Based on the evidence before the court, Nedzvekas has not raised a genuine issue of material fact as to whether CM employed 50 or more employees, and as a result, she cannot proceed under the FMLA, and summary judgment is appropriate for Defendants. Because Nedzvekas cannot sue under the FMLA, the court does not analyze the substantive merits of her claim.

■ The court agrees with the Department of Labor and adopts the "payroll method" to apply to FMLA claims, as articulated in *Walters*, 519 U.S. at 207, 117 S.Ct. 660. There is no dispute among the Circuit courts as to the this issue, nor has the Seventh Circuit indicated a desire to follow a separate analysis. Neither party has given consideration to the "payroll method" as described in *Walters*. That case speaks to the core issue of Nedzve-

kas' claim, and Defendants' arguments in their summary judgment briefs. Also absent from the parties' briefs are any payroll time sheets, or payroll stubs from Defendants' Human Resources Departments. While Janesko and Pierce have testified based on personal knowledge, such documentary evidence is the best evidence to determine the number of employees at CM. There has been a total failure by Nedzvekas to establish the number of employees at CM during the course of her employment. A blanket statement, unsubstantiated by the record is insufficient to create a genuine issue of material fact.

## III. CONCLUSION

For the reasons stated above, the court grants Defendants' Motion for Summary Judgment. IT IS SO ORDERED.