UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 25, 2006[*]
Decided May 26, 2006

**Before**

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-3074

| | |
|---|---|
| GREGORY PATMYTHES,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>CITY OF JANESVILLE,<br>    *Defendant-Appellee.* | Appeal from the United States District Court for the Western District of Wisconsin<br><br>No. 04-C-367-C<br><br>Barbara B. Crabb,<br>*Chief Judge.* |

## O R D E R

Gregory Patmythes sued his former employer, the City of Janesville ("Janesville"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq*., and the Rehabilitation Act, 29 U.S.C. § 701 *et seq*, alleging that Janesville discharged him because of the costs of treating his cystic fibrosis. The district court granted summary judgment for Janesville, but because Patmythes has raised

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

genuine issues of material fact regarding whether Janesville's asserted non-discriminatory reason for his termination was pretextual, we vacate and remand.

We review a grant of summary judgment *de novo*, construing all facts and inferences in the light most favorable to Patmythes. *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005). Janesville hired Patmythes in March 1999 as a Permit Coordinator in a department later named the Department of Building, Housing, and Neighborhood Services ("Building Department"). His computer skills, degree in Industrial Education and Technology, and expertise in construction and drafting suited him for the permit coordinator position. That position required him to supervise and maintain a computer system for permit and code enforcement; field questions regarding building, zoning, and sign compliance; administer the sign code and issue sign permits; and inspect and review residential construction plans.

Patmythes has cystic fibrosis, a potentially life-threatening genetic condition that requires extensive and costly medical care. Despite his condition, by all accounts he was performing his job well—his performance was evaluated as "superior" and "outstanding" on his employee evaluations from 1999 through 2002, and he received several merit pay increases during his tenure with Janesville. Christine Wilson, his immediate supervisor, found his computer and design skills particularly useful, noting in 1999 that Patmythes "has been very helpful to staff on Microsoft conversion," and in 2001 that his "truss designing background is a great asset" for the Building Department.

Beginning in 2002, Janesville faced financial difficulties due, in part, to rising health insurance costs, so it began a plan to overhaul its organizational structure. In 2003 the city hired an outside analyst to further study its healthcare plans and costs. During this period, Wisconsin reduced Janesville's share of state revenues by about a million dollars. As a consequence of the planned reorganization and budget cuts, Steve Sheiffer, the Janesville city manager, proposed a budget plan to eliminate the equivalent of 10.95 full-time positions. This plan required that one full-time position from the Building Department be eliminated.

At a meeting of Janesville employees in early April 2003, Sheiffer discussed the budget plan and proposed position eliminations. He assured employees that he hoped to eliminate positions without any layoffs. In the event that layoffs were necessary, Sheiffer explicitly said that he would lay off only those employees demonstrating performance problems. On April 11 city managers told Patmythes that he would be laid off on December 31. Sheiffer admits that when he made the statement that only employees with performance issues would be laid off, he lied; he knew that he would be terminating Patmythes, a good performer. Sheiffer made these deceptive assurances, he claims, so that employees would remain calm.

On December 3, 2003, Janesville abandoned the "poor performance" rationale and offered a different justification for Patmythes's layoff in a written notice it presented to him. The notice states that a position in the Building Department needed to be eliminated as part of the 2004 budget plan and that after looking at the "services each [position] provides, the benefit to and impact upon the citizens we serve, department needs, service prioritization . . . and the overall needs and best interests of the community," Janesville decided to lay off Patmythes. In its filings in court, Janesville says it laid off Patmythes because his position was not essential and the permit coordinator duties could be easily transferred to remaining employees.

Patmythes can prove discrimination under the ADA or the Rehabilitation Act through either the direct or indirect methods. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004) (ADA); *see Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002) (ADA standards apply to Rehabilitation Act). The direct method requires either an admission of prohibited animus or statements or conduct from Janesville from which forbidden hostility may be inferred. *See Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 616 (7th Cir. 2000). Under the indirect, burden-shifting method, Patmythes must first make out a prima facie case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts to Janesville to offer a legitimate, non-discriminatory reason for Patmythes's adverse employment action. *Nese v. Julian Nordic Constr. Co.,* 405 F.3d 638, 641 (7th Cir. 2005); *Buie,* 366 F.3d at 503. Once Janesville satisfies its burden, the burden shifts back to Patmythes to show that Janesville's explanation was pretextual. *Nese*, 405 F.3d at 641; *Buie*, 366 F.3d at 503.

On appeal Patmythes proceeds under both the direct and indirect methods of proof; however, because we conclude that Patmythes has produced enough evidence of pretext, we need only address his argument under the indirect method. Janesville concedes that Patmythes has made out a prima facie case. So the question is whether there is sufficient evidence to cast doubt on the sincerity of Janesville's asserted reason for discharging Patmythes. A factfinder can infer that an employer is dissembling to cover up a discriminatory purpose if a plaintiff has evidence that a proffered reason for a discharge is false. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000) ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"); *see St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993). And we have held that "[b]ecause a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment." *Zaccagnini v. Chas. Levy Circulating Co.,* 338 F.3d 672, 676 (7th Cir. 2003) (quoting *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir. 1995)). Even if the plaintiff's evidence does not compel the conclusion that his

employer discriminated against him, "if there is a question of fact as to the believability of an employer's purported reasons for an employment decision" then "at a bare minimum it suffices to defeat the employer's summary judgment motion." *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 726 (7th Cir. 2005) (internal citation and internal quotation marks omitted). *See also id.* (pretext can be reasonably inferred where employer provides shifting or inconsistent reasons for the employment decision); *Appelbaum v. Milwaukee Metro. Sewerage Dist.,* 340 F.3d 573, 579 (7th Cir. 2003) (same); *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876-77 (7th Cir. 2002) (same); *O'Neal v. City of New Albany,* 293 F.3d 998, 1006 (7th Cir. 2002) (changed story is evidence of pretext); *Stalter v. Wal-Mart Stores, Inc.,* 195 F.3d 285, 291 (7th Cir. 1999) (same).

In this case, Sheiffer initially told employees at the staff meeting that he would discharge only poor performers, a statement that he knew was false. Janesville wanted to cut health care costs and knew that Patmythes had cystic fibrosis. To justify the layoff, Sheiffer later gave Patmythes a different explanation for his discharge—that Patmythes's position was unnecessary. A factfinder is now required to determine whether, as Janesville now claims, its originally offered reason for the discharges (poor performance) was just a lie to calm employees from the truth (unnecessary good performers would be cut) or whether the original reason (poor performance) was a lie to cover up a different truth (discrimination against Patmythes as a potentially costly cystic fibrosis sufferer).

Because Patmythes has raised genuine issues of material fact regarding whether Janesville's non-discriminatory reason for his termination was pretextual, we VACATE and REMAND for proceedings consistent with this opinion.